UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| v. § | |
| § | EP:23-CR-01095-ATB |
| MARCOS ALVAREZ-MURILLO § | |
| § | |
| *Defendant.* § | |

**MEMORANDUM ORDER**

In the Misdemeanor Information (ECF No. 99), the Government charges Defendant Marcos Alvarez-Murillo with one count of simple assault under 18 U.S.C. § 113(a)(5). This case is set for a bench trial on March 21, 2024.

On February 12, 2024, the Court ordered the parties to file briefs on what elements the Government must prove beyond a reasonable doubt to convict Defendant of a "simple assault" under § 113(a)(5), and what affirmative defenses apply, if any. The Government filed its brief on February 26, 2024, and Defendant filed his own on March 11, 2024. *See* Gov't Br., ECF No. 152; Def.'s Br., ECF No. 162. Having reviewed the parties' briefing, the Court issues this opinion to explain what elements it will require the Government to prove beyond a reasonable doubt and its reasoning.

**I.    The offense of simple assault, 18 U.S.C. § 113(a)(5)**

Section 113(a)(5) reads, "[w]hoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: . . . [s]imple assault, by a fine under this title or imprisonment for not more than six months, or both." Compared to the other kinds of assault in the statute, including "assault with intent to commit murder," § 113(a)(1), and "assault with a dangerous weapon, with intent to do bodily harm," § 113(a)(3), section 113(a)(5) does not require the Government to prove specific intent for "simple assault." *See United*

*States v. Bayes*, 210 F.3d 64, 68 (1st Cir. 2000). The statute, however, neither defines "assault" nor "simple assault"; nor are such terms defined elsewhere in Title 18. *See United States v. Watts*, 798 F.3d 650, 652 (7th Cir. 2015). Nor does existing Fifth Circuit case law elaborate on these terms to help guide courts on what exactly the Government must prove beyond a reasonable doubt to convict defendants for "simple assault." *See, e.g.*, *United States v. Estrada-Fernandez*, 150 F.3d 491, 495 (5th Cir. 1998) ("In order to prove a defendant guilty of simple assault, the government need only show that the defendant assaulted the victim."). What is more, the Fifth Circuit has yet to address § 113(a)(5) in its Pattern Jury Instructions.

When Congress uses a common-law term in a federal criminal statute, without defining it otherwise, courts generally give that term its established meaning under common law. *See United States v. Turley*, 352 U.S. 407, 411 (1957); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979). As the Supreme Court has explained, courts import "the cluster of ideas" embodied in that common-law term to the statutory text because:

> [when] Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

*Carter v. United States*, 530 U.S. 255, 264 (2000) (cleaned up); *see also United States v. Hansen*, 599 U.S. 762, 778 (2023) ("When Congress transplants a common-law term, the 'old soil' comes with it."). Thus, the Court turns to the common-law definition of "assault" and its "cluster of ideas" for guidance to construe § 113(a)(5).

## II.  The common-law definition of "assault"

"Assault" has three meanings at common law—(1) an attempted battery; (2) an actual battery; and (3) an act that puts another in reasonable apprehension of bodily harm. *See Bayes*,

210 F.3d at 69; *United States v. Williams*, 197 F.3d 1091, 1096 (11th Cir. 1999).  In its brief, the Government explains that it is charging Defendant under a theory of actual battery.  *See* Gov't Br. at 2.  Thus, the Court only elaborates below on the elements that the Government must prove for a § 113(a)(5) charge under such theory.

A "battery" at common law means "a harmful or offensive contact" with another.  *See City of Fort Worth v. Deal*, 552 S.W.3d 366, 372 (Tex. App. 2018) (quoting *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014)).  It does not distinguish "between different degrees of violence" because it "prohibits the first and lowest stage of it."  *Watts*, 798 F.3d at 652 (citations omitted).  Because "[p]ersonal indignity is the essence" of a battery, the common law holds an individual liable "not only for contacts which do actual physical harm, but also for those which are offensive and insulting."  *See Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967) (holding that, despite no bodily harm, forceful dispossession of plaintiff's plate in an offensive manner constituted battery).  Contact is "offensive" when it "would offend the ordinary person"—that is, when such contact "is unwarranted by the social usages prevalent at that time and place at which it is inflicted."  *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 803 n. 15 (Tex. 2010) (quoting Restatement (Second) of Torts § 19 cmt. a (1965)).

Common-law battery is not a specific intent crime—that is, it does not require intent to either injure or touch the victim offensively.  *See United States v. Delis*, 558 F.3d 177, 180 (2d Cir. 2009) (citations omitted).  Instead, it only requires either a general intent to commit the act (that is, the contact), recklessness, or criminal negligence.  *Id.*  In other words, common-law battery only requires that the contact was "willful."  *See United States v. Lewellyn*, 481 F.3d 695, 697 (9th Cir. 2007) (citations omitted).  "The term 'willful' as used at common law as an element of a general intent crime refers to a volitional act."  *See United States v. Loera*, 923 F.2d 725, 728 (9th Cir. 1991) (citations omitted).  "A voluntary act is one in which the individual has the ability to

choose his course of conduct." *Id.* So, it follows that "[t]he slightest willful offensive touching of another" can constitute a battery. *Williams*, 197 F.3d at 1096.

With all that in mind, the Court next evaluates the parties' proposed formulations of the elements for the § 113(a)(5) charge against the common law discussed above.

### III. The parties' proposed elements of a § 113(a)(5) charge

In their briefs, the parties disagree on the exact elements that the Government must prove for the § 113(a)(5) charge here. On the one hand, the Government proposes only two elements: that (1) Defendant assaulted D.D.T.; and (2) within the special maritime and territorial jurisdiction of the United States. *See* Gov't Br. at 3. The Government then relies on *United States v. Bayes*, 210 F.3d 64 (1st Cir. 2000), and *United States v. Whitefeather*, 275 F.3d 741 (8th Cir. 2002) (affirming jury instructions based on *Bayes*), to expand on what constitutes an "assault" under the first element: "it is sufficient to show that the defendant deliberately touched another in a patently offensive manner without justification or excuse." *Id.*

On the other hand, Defendant proposes three elements: that (1) Defendant intentionally touched D.D.T.; (2) the touching was deliberately and patently offensive; and (3) the contact was made without justification or excuse. *See* Def.'s Br. at 3–4. Like the Government, Defendant also mainly relies on *Bayes* and *Whitefeather*, as well as on similar cases, to support his proposed formulation of the elements. *Id.* He also relies on those cases to argue that courts place the burden on the Government to prove a "lack of justification or excuse" as an element of a § 113(a)(5) charge, rather than place the burden on defendants to prove a "justification or excuse" as an affirmative defense. *Id.* Thus, Defendant argues that the Government must prove, as part of his proposed third element, that "the offensive touching was made without consent and/or not for the purposes of self-defense or the provision of medical treatment." *Id.*

After evaluating both proposed formulations against the common-law definition of "assault" and its "cluster of ideas," the Court concludes that neither formulation of the elements is correct. For one thing, the parties' proposed formulations contain undefined terms on which neither *Bayes* nor *Whitefeather* expand. Neither the parties nor the cases on which they rely define "deliberately" or "patently"; nor is it clear whether the common-law meaning of "assault" or its "cluster of ideas" includes such terms. Indeed, the Ninth Circuit noted the same in a case where it affirmed a § 113(a)(5) conviction: "Although the district court, referencing the amended information and citing *Bayes*, injected the term 'patently' into the definition (as in 'patently offensive'), this word was not part of the standard at common law nor do we believe it essential to the definition." *Lewellyn*, 481 F.3d at 698. Thus, the Court instead adopts the term "willful" to encompass the general-intent nature of the "simple assault" offense as the Eleventh Circuit did, *see Williams*, 197 F.3d at 1096, and declines to include "patently" because it is not part of the standard at common law as the Ninth Circuit noted, *see Lewellyn*, 481 F.3d at 698.

What is more, the parties' proposed formulations appear to conflict with the common law. Indeed, both parties read *Bayes* and *Whitefeather* to place the burden on the Government to prove that a defendant made the offensive contact "without justification or excuse" as an element of a § 113(a)(5) charge. But as the Supreme Court has explained, "at common law, the burden of proving affirmative defenses—indeed, all circumstances of justification, excuse or alleviation—rested on the defendant." *Dixon v. United States*, 548 U.S. 1, 8 (2006) (cleaned up). And this makes sense: when a defendant asserts an affirmative defense, he admits committing the alleged criminal conduct but argues that he should not be held liable because either such conduct was justified or he was excused under the circumstances. For example, a defense by justification—such as self-defense or necessity, among others—applies when a defendant engages in conduct that is otherwise criminal but which under the circumstances is socially acceptable and deserves no

criminal liability.[1]  In contrast, a defense by excuse—such as infancy or insanity, among others—applies when a defendant engages in criminal conduct but some characteristic of his person vitiates society's desire to punish him.[2]

The Court also does not read *Bayes* and *Whitefeather* to hold that the Government must prove that the offensive contact was made "without justification or excuse" as an element of a § 113(a)(5) charge.  To be sure, one could read the First Circuit's holding in *Bayes* that "it is sufficient" for the Government to prove that the defendant "deliberately touched another in a patently offensive manner without justification or excuse," without more, in the way the parties read it.  *See Bayes*, 210 F.3d at 69.  Indeed, the district court reviewed by the Eighth Circuit in *Whitefeather* read *Bayes* in the same way the parties read it here.  *See Whitefeather*, 275 F.3d at 742.  But one could also read *Bayes* to say that, even after the Government proves the offensive touching, if a defendant meets his burden on an affirmative defense by justification or excuse, then the Government must prove that no such justification or excuse exists under the circumstances to convict the defendant.  *See, e.g.*, *United States v. Branch*, 91 F.3d 699, 714 n.1 (5th Cir. 1996) ("Self-defense is an affirmative defense on which the defendant bears the initial burden of production. . . . If and only if the defendant has met his burden of production, the Government bears the burden of persuasion and must negate self-defense beyond a reasonable doubt.").  Thus, because the latter reading reconciles *Bayes* and *Whitefeather* with the common law on affirmative defenses, the Court adopts such reading.

---

[1] *See* Wayne R. LaFave, 2 Subst. Crim. L. § 9.1(a)(3) (3d ed.); Michael D. Bayles, Reconceptualizing Necessity and Duress, 33 Wayne L. Rev. 1191, 1203 (1987); 1 Paul Robinson, Criminal Law Defenses 100-01 (1984).

[2] *See* LaFave, 2 Subst. Crim. L. § 9.1(a)(4); Bayles, 33 Wayne L. Rev. at 1203; Robinson, Criminal Law Defenses 100-01.

For all that, the Court does agree with Defendant that the burden of proving that he made the offensive contact without consent rests on the Government—although not for the reasons he offers. The Second Restatement of Torts provides that "invasions of interests of personality" formed, at common law, the basis for battery, assault, or false imprisonment actions. *See* Restatement (Second) of Torts § 13, cmt. d (1965). To that end, a lack of consent is inherent to the definition of a battery because "consent" entails the "willingness in fact that an act or an invasion of an interest shall take place." *See id.* § 10A. Put another way, any contact to which the alleged victim consented cannot constitute a battery because such contact is not offensive under the circumstances. Such proposition is supported by the "cluster of ideas" associated with common-law battery in the medical context: under Texas common law, medical treatment provided without consent constitutes a battery. *Texas Tech Univ. Health Scis. Ctr.-El Paso v. Bustillos*, 556 S.W.3d 394, 403 (Tex. App. 2018) (citing *Miller ex rel. Miller v. HCA, Inc.*, 118 S.W.3d 758, 767 (Tex. 2003)). Even so, defendants are still criminally liable for battery when the contact goes beyond the scope of consent, or they obtain consent by fraud, deception, or duress. *See, e.g.*, *Leleux v. United States*, 178 F.3d 750, 755 (5th Cir. 1999) ("[W]here an action would constitute a battery in the absence of consent, the fraudulent procurement of consent eliminates the witting agreement."); Restatement (Second) of Torts § 892B cmt. a (1979) (harmful or offensive contact still constitutes battery if victim is induced by fraud, mistake, or duress to consent to such contact with his person). Thus, the Court concludes that the Government must prove that the defendant touched the victim's person without consent as part of its burden to prove that such contact was done in an offensive manner.

## IV.   Conclusion

Accordingly, based on the Court's review above of the common-law meaning of "assault" and its "cluster of ideas," and absent Fifth Circuit guidance, the Court concludes that to convict

Defendant here of a simple assault under § 113(a)(5), the Government must prove, beyond a reasonable doubt, that (1) Defendant willfully touched D.D.T.; (2) in an offensive manner; and (3) within the special maritime or territorial jurisdiction of the United States.

**So ORDERED and SIGNED this 14th day of March 2024.**

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**